XAVIER BECERRA
Attorney General of California
MARK T. CUMBA
Supervising Deputy Attorney General
DONNA M. DEAN
Deputy Attorney General
State Bar No. 187104
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 269-6509
  Fax:  (916) 731-2120
  E-mail:  Donna.Dean@doj.ca.gov
*Attorneys for Defendant*
*Brian Green*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROSE DIAZ, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**COUNTY OF VENTURA, ET AL.,**<br><br>Defendants. | 2:19-cv-04695 DMG(AGRx)<br><br>**DEFENDANT BRIAN GREEN'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:           January 8, 2021<br>Time:          3:00 p.m.<br>Courtroom:  8C<br><br>Judge:         Hon. Dolly M. Gee<br><br>Trial Date:  March 30, 2021<br>Action Filed: May 30, 2019 |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT on January 8, 2021, at 3:00 p.m., in

Courtroom 8C of the United States District Court located at 350 West First Street,

Los Angeles, California, Defendant California Highway Patrol Officer Brian Green

(Officer Green) will, and hereby does, move the Court as follows:

1.　For summary judgment in favor of Officer Green and against Plaintiffs because Plaintiffs cannot establish the existence of a genuine issue of material fact as to any claim asserted against Defendant, and Defendant is entitled to judgment as a matter of law.

2.　If, for any reason, summary judgment cannot be had, for partial summary judgment as to the following claims and issues:

A.　Officer Green is entitled to judgment in his favor as to Plaintiffs' First Cause of Action pursuant to 42 U.S.C. section 1983 based on unreasonable use of force because the uncontroverted facts establish that his use of force was objectively reasonable.

B.　Officer Green is entitled to judgment in his favor as to Plaintiffs' First Cause of Action pursuant to 42 U.S.C. section 1983 based on unreasonable use of force because there is no evidence showing that he violated any rights that were "clearly established" at the time of the alleged violation, and he is therefore entitled to qualified immunity.

C.　Officer Green is entitled to judgment in his favor as to Plaintiffs' Third Cause of Action pursuant to 42 U.S.C. section 1983 based on a violation of Plaintiffs' substantive due process rights because there is no evidence that he acted with a purpose to harm unrelated to a legitimate law enforcement objective.

D.　Officer Green is entitled to judgment in his favor as to Plaintiffs' Third Cause of Action pursuant to 42 U.S.C. section 1983 based on a violation of Plaintiffs' substantive due process rights because there is no evidence showing that he violated any rights that were "clearly established" at the time of the alleged violation, and he is therefore entitled to qualified immunity.

E.　Officer Green is entitled to judgment in his favor as to Plaintiffs' Fifth Cause of Action for negligence because the uncontroverted facts establish that his use of force was objectively reasonable under the totality of the circumstances.

1          F.     Officer Green is entitled to judgment in his favor as to Plaintiffs'

2 Sixth Cause of Action based on Civil Code section 52.1 because there is no

3 evidence that he violated Decedent's constitutional rights or that he acted with a

4 specific intent to violate Decedent's right to freedom from unreasonable seizure.

5          G.     Officer Green is entitled to judgment in his favor as to Plaintiffs'

6 Seventh Cause of Action for battery because the uncontroverted facts establish that

7 his use of force was objectively reasonable.[1]

8      This motion is made following the conference of counsel pursuant to L.R. 7-3

9 which took place on November 24, 2020.  During the conference of counsel,

10 counsel for plaintiffs agreed to dismiss plaintiffs' Second Cause of Action pursuant

11 to 42 U.S.C. section 1983 based on denial of medical care.

12      This Motion is and will be based upon this Notice, the Memorandum of Points

13 and Authorities, the Declarations of Brian Green, Joanne Smith, Victor Lacy, Ryan

14 Poynter, Dean Cook, Michael Monteagudo, Michael Venato, Michael Coons, Vina

15 Spiehler, and Donna M. Dean, the concurrently filed Request for Judicial Notice,

16 all filed in support thereof, the Proposed Statement of Uncontroverted Facts and

17 Conclusions of Law lodged in support thereof, oral argument at any hearing on the

18 motion, and all other papers and pleadings on file herein.

19 Dated: December 2, 2020               Respectfully submitted,

20
                                        XAVIER BECERRA

21                                     Attorney General of California
                                     MARK T. CUMBA

22                                     Supervising Deputy Attorney General

23                                       s/ Donna M. Dean

24                                     DONNA M. DEAN
                                     Deputy Attorney General

25                                     *Attorneys for Defendant*
                                     *Brian Green*

26

27          [1] Plaintiffs' agreed to dismiss their Second Causes of Action during meet and

28 confer discussions regarding this motion.  Plaintiffs' Fourth Cause of Action for municipal liability is not asserted against Officer Green.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

       A.    The Pursuit ........................................................................................ 2

       B.    The Standoff ..................................................................................... 3

       C.    The Shooting .................................................................................... 4

ARGUMENT ............................................................................................................. 5

    I.    Officer Green Is Entitled to Summary Judgment on Plaintiffs'
First Cause of Action for Excessive Force Because the
Uncontroverted Facts Establish That His Use of Force Was
Objectively Reasonable ................................................................... 5

    II.    Officer Green Is Entitled to Summary Judgment on Plaintiffs'
First Cause of Action Based on Qualified Immunity ..................... 8

    III.    Officer Green Is Entitled to Summary Judgment on Plaintiffs'
Third Cause of Action for Violation of Their Substantive Due
Process Rights Because Plaintiffs Cannot Show a Purpose to
Harm Unrelated to a Legitimate Law Enforcement Objective .......... 12

    IV.    Officer Green Is Entitled to Summary Judgment on Plaintiffs'
Third Cause of Action Based on Qualified Immunity ..................... 13

    V.    Officer Green Is Entitled to Summary Judgment on Plaintiffs'
Fifth Cause of Action for Negligence Because the
Uncontroverted Facts Establish That His Actions Were
Objectively Reasonable ................................................................... 13

    VI.    Officer Green Is Entitled to Summary Judgment on Plaintiffs'
Seventh Causes of Action for Battery Because the
Uncontroverted Facts Establish That His use of Force Was
Objectively Reasonable ................................................................... 14

    VII.    Officer Green Is Entitled to Summary Judgment on Plaintiffs'
Sixth Cause of Action Pursuant to California Civil Code Section
52.1 Because There Is No Evidence That He Had a Specific
Intent to Violate Diaz's Rights ........................................................ 15

CONCLUSION......................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page**

CASES

*A.D. v. Markgraf*
   712 F.3d 446 (9th Cir. 2012) .................................................................. 12

*Anderson v. Creighton*
   483 U.S. 635 (1987) ........................................................................... 9, 12

*Anderson v. Russell*
   247 F.3d 125 (4th Cir. 2001) .................................................................. 11

*Ashcroft v. al-Kidd*
   563 U.S. 731 (2011) ....................................................................... 8, 9, 10

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) .............................................................................. 9

*Barnes v. City of Pasadena*
   508 Fed. App'x. 663 (9th Cir. 2013) ....................................................... 11

*Brown v. Ransweiler*
   171 Cal. App. 4th 516 (2011) ............................................................ 13, 14

*City and Cty. of San Francisco v. Sheehan*
   135 S. Ct. 1765 (2015) .......................................................................... 8

*City of Escondido v. Emmons*
   139 S. Ct. 500 (2019) ............................................................................ 9

*Davis v. Scherer*
   468 U.S. 183 (1984) .............................................................................. 9

*Elliott v. Leavitt*
   99 F.3d 640 (4th Cir. 1996) ............................................................... 11, 12

*Estate of Ford v. Ramirez-Palmer*
   301 F.3d 1043 (9th Cir. 2001) ............................................................... 10

*Forrett v. Richardson*
   112 F.3d 416 (9th Cir. 1997) ................................................................. 11

1
2

## TABLE OF AUTHORITIES
### (continued)

Page

3
4

*Gonzalez v. City of Anaheim*
   747 F.3d 789 (9th Cir. 2014) ................................................................. 12

5
6

*Graham v. Connor*
   490 U.S. 386 (1989) ..................................................................... 5, 6

7
8

*Hayes v. Cty. of San Diego*
   57 Cal. 4th 622 (2013) .................................................................. 13

9
10

*Johnson v. United States*
   576 U.S. 591 (2015) ...................................................................... 6

11

*Kisela v. Hughes*
   138 S. Ct. 1148 (2018) .................................................................. 10

12
13

*Mitchell v. Forsyth*
   472 U.S. 511 (1985) ....................................................................... 9

14
15

*Munoz v. City of Union City*
   120 Cal. App. 4th 1077 (2004) ...................................................... 14

16
17

*Munoz v. Olin*
   24 Cal. 3d 629 (1979) ................................................................... 13

18
19

*Pearson v. Callahan*
   555 U.S. 223 (2009) ....................................................................... 8

20
21

*Plumhoff v. Rickard*
   572 U.S. 765 (2014) ....................................................................... 6

22

*Porter v. Osborn*
   546 F.3d 1131 (9th Cir. 2008) ....................................................... 12

23
24

*Reese v. Anderson*
   926 F.2d 494 (5th Cir. 1991) ......................................................... 11

25
26

*Reese v. Cty. of Sacramento*
   888 F.3d 1030 (9th Cir. 2018) ................................................. 10, 15

27
28

*Reichle v. Howards*
   566 U.S. 658 (2012) .................................................................... 8, 9

# TABLE OF AUTHORITIES
### (continued)

Page

*Sandoval v. Cty. of Sonoma*
  912 F.3d 509 (9th Cir. 2018) ................................................................. 15

*Saucier v. Katz*
  533 U.S. 194 (2001) ............................................................................. 12

*Shafer v. Cty. of Santa Barbara*
  868 F.3d 1110 (9th Cir. 2017) ................................................................. 8

*Sharp v. Cty. of Orange*
  871 F.3d 901 (9th Cir. 2017) ................................................................. 10

*Slattery v. Rizzo*
  939 F.2d 213 (4th Cir. 1991) ................................................................. 11

*Sykes v. United States*
  564 U.S. 1 (2011) ................................................................................... 6

*Tennessee v. Garner*
  471 U.S. 1 (1985) ........................................................................... 10, 11

*Thompson v. Hubbard*
  257 F.3d 896 (8th Cir. 2001) ................................................................. 12

*United States v. Martinez*
  771 F.3d 672 (9th Cir. 2014) ................................................................... 6

*Wilkinson v. Torres*
  610 F.3d 546 (9th Cir. 2010) ............................................................. 5, 10

**STATUTES**

**Federal**

42 U.S.C. § 1983 ................................................................................. 8, 12

**State**

Cal. Civ. Code § 52.1 ......................................................................... 1, 15

Cal. Veh. Code § 2800.2 ......................................................................... 6

iv

**TABLE OF AUTHORITIES**
**(continued)**

Page

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment .............................................................................*passim*

1

**INTRODUCTION**

2  This lawsuit arises out of the shooting of Decedent Dimas Diaz, Jr., by

3 California Highway Patrol (CHP) Officer Brian Green and Ventura County

4 Sheriff's Office (VCSO) Deputy Noel Juarez.  After leading police on a high speed

5 pursuit on city streets and the 101 freeway, Diaz, who was known to be armed and

6 dangerous, a wanted felon, and in violation of parole, crashed his car and then

7 engaged in an approximately one-hour standoff with officers using his car for

8 concealment and cover.  During the standoff, Diaz failed to obey approximately

9 100 commands to show his hands and surrender, continuously concealed his right

10 hand, and threatened to shoot the officers.  After nearly an hour, one officer fired a

11 "less lethal" bean bag round at Diaz, knocking him down.  As officers rushed

12 toward Diaz to arrest him, Diaz got up, pointed a black object at the officers, and

13 lunged forward.  Officer Green and Deputy Juarez fired their weapons, killing Diaz.

14  The central issue in this motion is whether Officer Green was justified in using

15 deadly force when Diaz lunged toward the officers with what appeared to be a gun

16 in his hand.  The uncontroverted facts establish that Officer Green's use of force

17 was objectively reasonable under the totality of the circumstances because Officer

18 Green had probable cause to believe Diaz posed an imminent threat of serious

19 bodily injury or death to himself and the other officers.  For the same reasons,

20 plaintiffs' negligence and battery claims fail.  Plaintiffs' substantive due process

21 claim has no merit as there is no evidence that Officer Green's use of force was for

22 a purpose to harm unrelated to a legitimate law enforcement objective.

23  Plaintiffs' claims for violation of the Fourth and Fourteenth Amendments are

24 also barred by qualified immunity, as Officer Green did not violate any "clearly

25 established" law or right under the Fourth or Fourteenth Amendments.

26  Finally, Plaintiffs can provide no evidence to support their California Civil

27 Code section 52.1 claim because there is no evidence Officer Green violated Diaz's

28

constitutional rights or acted with a specific intent to violate Diaz's right to freedom from unreasonable seizure.

Accordingly, Officer Green respectfully requests that the court enter summary judgment, or, in the alternative, partial summary judgment, in his favor.

### STATEMENT OF FACTS

**A.   The Pursuit**

On January 12, 2019, at approximately 10:30 a.m., Diaz fled from VCSO deputies.  Statement of Undisputed Facts (SUF) Nos. 5 and 6.  VCSO requested assistance from CHP.  SUF No. 7.  A VCSO helicopter also joined, monitored the pursuit from overhead, and took video.  SUF No. 8.  During the pursuit, Diaz ran red lights, reached speeds of up to approximately 80 m.p.h. on surface streets, entered the freeway and drove at high speeds and in the center divider.  SUF Nos. 4, 9, 11.

At approximately 11:10 a.m., Officer Green joined the pursuit.  SUF No. 10. Officer Green, who was the Officer in Charge for the CHP Moorpark area office that day, was wearing a tan CHP uniform and driving a marked CHP vehicle.  SUF Nos. 1-3.  During the pursuit, Officer Green saw the suspect vehicle reach speeds of 95 to 100 miles per hour and use the center divider to pass other vehicles.  SUF No. 12.  The officers, including Officer Green, were advised by dispatch that Diaz was driving a stolen vehicle, was considered armed and dangerous, was a wanted felon, had a "no bail" parole warrant, and had a history of "psych" concerns, weapons, and gangs.  SUF Nos. 4, 13-15.

At approximately 11:15 a.m., Officer Green cancelled the pursuit due to traffic and weather conditions.  SUF No. 16.  After evading police for approximately 45 minutes, Diaz swerved across all southbound lanes of the freeway, and crashed into a guardrail on the right shoulder.  SUF Nos. 5, 17.

After the collision, Diaz got out of the vehicle and barricaded himself on the driver's side of the vehicle so that the vehicle was between himself and the officers.

2

SUF No. 18.  Officer Green and other law enforcement personnel blocked the freeway, held Diaz at gunpoint, and ordered him to surrender.  SUF No. 19.

### B.   The Standoff

Officer Green believed that Diaz was using his vehicle for cover and concealment from the law enforcement officers.  SUF No. 20.  Officer Green also saw that Diaz was following his movements and making eye contact with him, so Officer Green continuously moved from the "V" of his patrol vehicle's door to the left rear of his patrol vehicle.  SUF No. 21.

Diaz refused to comply with over 100 commands to show his hands and surrender and instead engaged the officers in a standoff that lasted approximately one hour.  SUF Nos. 22-25.  Officer Green requested an armored vehicle/SWAT and another officer requested a canine unit, but they were told those resources were not available.  SUF No. 26.

During the standoff, Diaz was agitated and repeatedly exited and entered his vehicle, hid his hands, suddenly popped his head up over the vehicle and ducked down again, concealed his right hand in his jacket pocket, and was behaving very erratically.  SUF Nos. 22-25, 27-31.  Diaz continuously refused to raise his hands and surrender.  SUF Nos. 5, 22, 25.  Officer Green heard Diaz yell at the officers that if he came out from behind the vehicle he would "come out shooting."  SUF No. 28.  At one point, Diaz yelled, "You motherfuckers will get shot!"  SUF No. 31.  Diaz also yelled at the officers, "I'm not going back!" – apparently referring to his prison and parole status.  SUF No. 29.  Diaz also said he was never going to see his kids again.  SUF No. 30.  Given Diaz's erratic behavior, Officer Green believed that Diaz was under the influence of drugs or alcohol.  SUF No. 32.

The VCSO helicopter eventually had to leave to refuel.  SUF No. 33.

Officer Green was armed with an AR-15 rifle.  SUF No. 34.  CHP Officer Werner Pineda was armed with a shotgun loaded with less-lethal, beanbag shot shells.  SUF No. 35.

Approximately one hour after Diaz crashed his car, as Diaz was standing outside of his vehicle and facing the officers, Officer Pineda announced, "Less-lethal!" and fired a round at Diaz, causing Diaz to fall backward to the pavement. SUF No. 36.

**C.    The Shooting**

In a rapidly unfolding sequence of events, officers approached Diaz to arrest him.  SUF No. 37.  Officer Green saw an object that he believed to be a knife and yelled, "Knife! Knife! Knife!"  SUF No. 38.  Instead of surrendering, Diaz rose to his feet, concealed his right hand, and used his left hand to hold a black object. SUF No. 38.  Diaz pointed the black object at the officers and lunged forward. SUF No. 40.



SUF No. 40 (Coons Decl., ¶¶ 1-3, Ex. 7).[2]

Officer Green believed that the black object in Diaz's left hand was a gun. SUF No. 41.  Fearing for his life and the lives of his fellow officers, Officer Green fired four rounds from his rifle at Diaz.  SUF No. 42.  Officer Pineda also fired a

_____

[2] This photo is an enlargement of a portion of Exhibit 7 to the Declaration of Michael Coons.

second less-lethal round at Diaz.  SUF No. 43.  VCSO Deputy Noel Juarez also

fired his weapon at Diaz.  SUF No. 44. Diaz was pronounced dead at the scene.

SUF No. 45.  After the shooting, a black plastic object, which appears to be part of

a console of an automobile, was located next to Diaz's body.  SUF No. 46.

Diaz was under the influence of methamphetamine at the time of the incident.

SUF No. 47.

### ARGUMENT

**I.    OFFICER GREEN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' FIRST CAUSE OF ACTION FOR EXCESSIVE FORCE BECAUSE THE UNCONTROVERTED FACTS ESTABLISH THAT HIS USE OF FORCE WAS OBJECTIVELY REASONABLE**

An excessive force claim against a police officer is considered a seizure and

analyzed under the Fourth Amendment's objective reasonableness standard.

*Graham v. Connor*, 490 U.S. 386, 397 (1989).  The objective reasonableness

standard balances the "nature and quality" of the intrusion on the individual's

Fourth Amendment interests and countervailing government interests.  *Id.* at 396.

The courts should analyze reasonableness from the perspective of a reasonable

officer on the scene and a totality-of-the-circumstances analysis with then-existing

facts and circumstances, rather than with the benefit of 20/20 hindsight.  *Id.* at 396-

397.  This analysis includes the (1) severity of the crime, (2) whether the suspect

poses an immediate threat (the "most important single element"), and (3) whether

the suspect is actively resisting or evading arrest.  *Id.*  Only *objectively*

*unreasonable* force violates the Fourth Amendment.  *Graham*, 490 U.S. at 396.

Reasonable use of deadly force may include a range of conduct, and "the

availability of a less-intrusive alternative will not render conduct unreasonable."

*Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010).  Officers are not required to

be omniscient and need not possess absolute certainty of harm before engaging in

self-protection.  *Id.* at 553.  If officers are justified in firing at a suspect who poses a

severe threat to public safety, "the officers need not stop shooting until the threat

has ended." *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014).

Under the first factor of the *Graham* analysis, it is undisputed that, in addition to driving a stolen vehicle, Diaz was observed evading arrest with reckless disregard for public safety (Cal. Veh. Code (§ 2800.2), which included speeding and driving recklessly on city streets, running red lights, speeding and driving recklessly on the freeway, and using the center divider to pass vehicles.  SUF Nos. 11, 12, 16.  The Ninth Circuit recognizes that vehicle flight from police inherently poses a serious risk to the safety of pedestrians and other drivers, as well as a risk of violent confrontation.  *United States v. Martinez*, 771 F.3d 672, 677-678 (9th Cir. 2014), *cert. granted*, judgment vacated on other grounds, 576 U.S. 1080 (2015).  Similarly, in *Sykes v. United States*, 564 U.S. 1 (2011), the Supreme Court recognized,

> The attempt to elude capture is a direct challenge to an officer's authority.  It is a provocative and dangerous act that dares, and in a typical case requires, the officer to give chase.

*Sykes,* 564 U.S. at 9, overruled on other grounds by *Johnson v. United States*, 576 U.S. 591 (2015).  In addition, Diaz was driving under the influence of methamphetamine.  SUF No. 47.

Under the *Graham* third factor, it is also undisputed that Diaz attempted to actively evade arrest.  Diaz lead officers on a high-speed pursuit for approximately 45 minutes and then engaged in a standoff with law enforcement officers on the freeway for nearly an hour during which he told officers that he was armed and continuously concealed his right hand.  SUF Nos. 4-12, 18-25, 27-31.

Finally, under the second – and most important – *Graham* factor, Officer Green had probable cause to believe that Diaz posed an immediate threat of serious injury or death to himself and the other officers present at the scene when Diaz pointed what appeared to be a gun at Officer Green.  From Officer Green's perspective, Diaz fled from police, dangerously blew through red lights at high

speeds and drove recklessly on the freeway, reaching speeds of 95 to 100 miles per hour and passing other vehicles in the center divider.  SUF Nos. 11, 12, 17.  Officer Green had been advised that Diaz was armed and dangerous, had a history of violence, was driving a stolen vehicle, and had a no bail warrant because he had violated parole.  SUF Nos. 13-15.  After Diaz crashed his car, he did not put his hands up and surrender; instead, he barricaded himself behind his car and threatened to shoot the officers while concealing his right hand.  SUF Nos. 18-25, 27-31.  Even with several uniformed officers aiming guns at him and commanding him repeatedly to show his hands, Diaz did not give up.  *Id.*  In fact, he appeared to be taking a tactical position and following Officer Green's movements.  SUF Nos. 20-21.  The VCSO helicopter – which, unlike the officers, had an unobstructed view of Diaz – repeatedly advised that Diaz was concealing his right hand.  SUF No. 22.  Eventually, however, the VCSO helicopter had to leave to refuel, leaving the officers with no overhead surveillance of Diaz's conduct.  SUF No. 33.  Diaz refused to cooperate for nearly an hour, during which Officer Green heard Diaz say that he "would come out shooting," that he was "not going back" (presumably referring to prison given his parole status [SUF Nos. 15, 29]), and that he was never going to see his kids again.  SUF Nos. 23, 28-31.  Given his erratic behavior, Officer Green believed that Diaz was under the influence of drugs or alcohol – and, indeed, Diaz was under the influence of methamphetamine.  SUF Nos. 32, 46.  Finally, when Diaz was shot with a less lethal shotgun round to allow officers to end the standoff and effect an arrest, instead of giving up, Diaz got up and charged at the officers with an object in his hand pointed at Officer Green.  SUF Nos. 36-39.  Officer Green saw the object in Diaz's hands and believed that Diaz was holding a gun.  SUF Nos. 40-41.  To protect himself and his fellow officers, Officer Green fired his weapon at Diaz.  SUF No. 42.  The critical inquiry in these rapidly-evolving circumstances is what Officer Green perceived.  Diaz's threats to shoot the officers, his concealment of his right hand, and his furtive movement with an object

in his hand after being shot with a beanbag round created probable cause for any reasonable officer to believe that Diaz presented an imminent threat of serious harm.  Therefore, Officer Green's use of force was objectively reasonable.

The fact that Diaz did not actually have a gun in his possession does not alter the analysis because Officer Green did not, and could not, know this.  Police officers are not required to wait for critical seconds to verify an actual threat when a momentary delay or hesitation might gravely endanger their lives, even if they are mistaken about the nature of the threat.  *City and Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775 (2015).  Diaz's threats and his actions gave Officer Green probable cause to believe Diaz posed an imminent threat of serious harm or death, Officer Green's use of deadly force was objectively reasonable therefore, he is entitled to summary judgment on Plaintiffs' First Cause of Action pursuant to 42 U.S.C. section 1983 based on excessive force.

## II. OFFICER GREEN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' FIRST CAUSE OF ACTION BASED ON QUALIFIED IMMUNITY

Officer Green's use of force to protect himself did not violate clearly established Fourth Amendment law.  The doctrine of qualified immunity shields a government official from liability for monetary damages unless the plaintiff establishes "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Courts have the discretion to decide which prong of this analysis to address first under the circumstances of a particular case.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  A decision in the defendant's favor on either prong establishes qualified immunity, even without consideration of the other prong.  *See Reichle v. Howards*, 566 U.S. 658, 663 (2012); *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017), *cert. denied sub nom. Shafer v. Padilla*, 138 S. Ct. 2582 (2018), citing *Pearson*, 555 U.S. at 236.

Qualified immunity grants officials "breathing room to make reasonable but mistaken judgments about open legal questions" and "properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743. The purpose of qualified immunity is to ensure public officials will not be unduly hampered by fear of lawsuits when carrying out their duties to the public, and that peace officers in particular will not always err on the side of caution for fear of being held financially liable. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Davis v. Scherer*, 468 U.S. 183, 196 (1984). Qualified immunity accomplishes these objectives by serving as "both a defense to liability and limited 'entitlement not to stand trial or face the other burdens of litigation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009).

To determine whether a right was "clearly established," a court must first define the right at the appropriate level of specificity – a right must be established "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Reichle*, 566 U.S. at 665 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). For that to be true, "existing precedent must have placed the . . . constitutional question beyond debate." *Id.* (citation omitted). This requires either "controlling authority" or "a robust 'consensus of cases of persuasive authority'" establishing that the official's conduct was unconstitutional. *al-Kidd*, 563 U.S. at 741-742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

In the recent case of *City of Escondido v. Emmons,* 139 S. Ct. 500 (2019), the Supreme Court once again emphasized that:

> Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case ....

*Id.* at 503 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). This specificity is necessary because "[p]recedent involving similar facts can help move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful." *Kisela*, 138 S. Ct. at 1153 (quoting *Mullenix v. Luna,* 577 U.S. 7, 18, 136 S. Ct. 305, 312 (2015)). The Court in *Kisela* held – and the Court in *City of Escondido* reiterated – that officers are entitled to qualified immunity where there is no existing precedent that "squarely governs" the specific facts at issue. *Kisela*, 138 S. Ct. at 1153; *City of Escondido*, 139 S. Ct. at 503.

The Ninth Circuit also recently explained the importance of the specificity required by the Supreme Court in the Fourth Amendment context as follows:

> In other words, Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular conduct* was unlawful.

*Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (emphasis in original); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1038 (9th Cir. 2018).

After framing the right at the appropriate level of specificity, a court must analyze whether "controlling authority" or "a robust 'consensus of cases of persuasive authority'" establish that the official's conduct was unconstitutional. *al-Kidd*, 563 U.S. at 741-742. This standard is particularly important for peace officers, who are required to make constitutional rights decisions in the midst of rapidly-developing and dangerous circumstances using imperfect information. *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049 (9th Cir. 2001).

It is well-established that where a suspect threatens an officer with a weapon or where the officer has probable cause to believe that the suspect poses a threat of death or serious physical harm to the officer or others, the officer is justified in using deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Wilkinson*, 610 F.3d 546. It is not clearly established that using deadly force in this situation would

constitute excessive force under the Fourth Amendment.  Neither Supreme Court nor circuit precedent would have put a reasonable officer in Officer Green's position on notice that using deadly force in the particular circumstances he faced would violate the Fourth Amendment.

"[T]he Fourth Amendment does not require omniscience. . . ." *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996).  Accordingly, courts have held that use of deadly force was reasonable where a suspect, though ultimately found to be unarmed, failed to show his hands and appeared to reach for, or brandish, a weapon. *See, e.g., Anderson v. Russell*, 247 F.3d 125, 131 (4th Cir. 2001) (no constitutional violation when the suspect, believed to be armed, was shot while reaching toward pocket to turn off Walkman radio, because "[a]ny reasonable officer … would have imminently feared for his safety and the safety of others."); *Slattery v. Rizzo*, 939 F.2d 213, 216-217 (4th Cir. 1991) (use of deadly force justified where officer reasonably believed suspect was coming at him with a weapon [later determined to be a beer bottle] when suspect failed to comply with orders to show hands.); *see also*, *Forrett v. Richardson*, 112 F.3d 416, 420 (9th Cir. 1997), *superseded on other grounds* in *Chroma Lighting v. GTE Products Corp.*, 127 F.3d 1136, 1136 (9th Cir. 1997) (reinforcing finding in *Garner* that "it is not necessary that the suspect be armed or threaten the officer with a weapon" at the time of the shooting); *Barnes v. City of Pasadena*, 508 Fed. App'x. 663, 665 (9th Cir. 2013) (noting that "even if an issue of fact existed about the presence of a gun, the determinative issue was whether the officers reasonably believed Barnes had a gun and posed an immediate threat to safety).  As the Fifth Circuit explained, where a suspect comes to an abrupt stop after a high speed chase, refuses repeatedly to comply at gun point with commands to show his hands, and reaches down in defiance of those commands, "a reasonable officer could well fear for his safety …."  *Reese v. Anderson,* 926 F.2d 494, 500-501 (5th Cir. 1991).  "[Those] actions alone could cause a reasonable officer to fear imminent and serious physical harm."  *Id.*  The Eighth Circuit has

held, "an officer is not constitutionally required to wait until he sets eyes upon the weapon before employing deadly force to protect himself against a fleeing suspect who turns and moves as though to draw a gun." *Thompson v. Hubbard,* 257 F.3d 896, 899 (8th Cir. 2001).

In this case it is undisputed that, after a high-speed pursuit followed by a nearly one-hour standoff with a suspect who was considered armed and dangerous and had threatened to shoot the officers, Diaz lunged at the officers with an object in his hand that Officer Green believed to be a gun.  SUF Nos. 5-25, 27-31, 36-40. Even if Officer Green may have been mistaken about the nature of the threat posed by Diaz, any such mistake was reasonable.  *Anderson v. Creighton,* 483 U.S. at 641; *Saucier v. Katz,* 533 U.S. 194, 205 (2001); *Elliott*, 99 F.3d at 644. Accordingly, Officer Green is entitled to summary judgment on Plaintiffs' First Cause of Action pursuant to 42 U.S.C. section 1983 based on excessive force based on qualified immunity.

**III.  OFFICER GREEN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' THIRD CAUSE OF ACTION FOR VIOLATION OF THEIR SUBSTANTIVE DUE PROCESS RIGHTS BECAUSE PLAINTIFFS CANNOT SHOW A PURPOSE TO HARM UNRELATED TO A LEGITIMATE LAW ENFORCEMENT OBJECTIVE**

A claim against a police officer for substantive due process rights under the Fourteenth Amendment considers the subjective intent of the officer.  *A.D. v. Markgraf*, 712 F.3d 446, 453 (9th Cir. 2012).  In circumstances with "constant flux" that require officers to make "snap judgments", substantive due process violations exist only when the officer "shocks the conscience", or intends to "harm, terrorize or kill" the suspect without a legitimate law enforcement objective.  *Porter v. Osborn*, 546 F.3d 1131, 1140-1141 (9th Cir. 2008) (applying a "purpose to harm" standard, reasoning that when the use of force against a suspect is only meant to "teach him a lesson" or "get even", officers would not be shielded from liability.)  In contrast, summary judgment for the officer is appropriate when there is no evidence of an ulterior motive.  *Gonzalez v. City of Anaheim*, 747 F.3d 789,

798-799 (9th Cir. 2014).

There is no evidence that Officer Green had a purpose to harm unconnected to a legitimate law enforcement objective.  Officer Green made the decision to fire at Diaz under rapidly-evolving and dangerous circumstances where he and other officers were under threat.  These actions do not shock the conscience.  Under these circumstances, the "purpose to harm" standard is not met, and Officer Green did not commit a substantive due process violation. Thus, Officer Green is entitled to summary judgment on Plaintiffs' Third Cause of Action based on the Fourteenth Amendment.

**IV.   OFFICER GREEN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' THIRD CAUSE OF ACTION BASED ON QUALIFIED IMMUNITY**

Given the authority cited in Section III above, Officer Green did not violate clearly established law concerning plaintiffs' substantive due process rights. Plaintiffs cannot show that there existed a clearly established law such that every reasonable officer would have understood that his use of force in the circumstances Officer Green faced was unlawful.  Thus, Officer Green is entitled to summary judgment on plaintiffs' Third Cause of Action based on qualified immunity.

**V.   OFFICER GREEN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' FIFTH CAUSE OF ACTION FOR NEGLIGENCE BECAUSE THE UNCONTROVERTED FACTS ESTABLISH THAT HIS ACTIONS WERE OBJECTIVELY REASONABLE**

Under California law, officers have a duty to use deadly force in a reasonable manner.  *Munoz v. Olin*, 24 Cal. 3d 629, 634 (1979).  But an officer will not be liable for negligence as long as his conduct falls "within the range of conduct that is reasonable under the circumstances" and is not required to choose the "most reasonable" action.  *Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 632 (2013) (quoting *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 537-538 (2011)).  Courts must analyze the reasonableness of the officer's conduct using the totality of the circumstances and from the perspective from a reasonable officer on the scene, and

not with the benefit of 20/20 hindsight.  *Id.*  Under California law, the reasonableness of officers' pre-shooting conduct should be considered together with the question of whether the use of deadly force was reasonable as long as the pre-shooting conduct did not cause the plaintiff injuries independent of the shooting injuries.  *Id.* at 639 ("Law enforcement personnel have a degree of discretion as to how they choose to address a particular situation.")

As discussed in Section I, Officer Green's conduct and use of force was objectively reasonable and falls under the range of reasonable conduct and permitted discretion given the circumstances. Accordingly, Officer Green is entitled to summary judgment on plaintiffs' Fifth Cause of Action based on negligence.

## VI. OFFICER GREEN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' SEVENTH CAUSES OF ACTION FOR BATTERY BECAUSE THE UNCONTROVERTED FACTS ESTABLISH THAT HIS USE OF FORCE WAS OBJECTIVELY REASONABLE

Under California law, a state battery cause of action, similar to the federal claim of excessive force claim discussed in Section I above, requires proof of unreasonable force.  *Brown*, 171 Cal. App. 4th at 527.  Police are not treated as ordinary battery defendants as they are charged with protecting public peace and order and use force as part of their duties.  *Id*.  Police are therefore "entitled to the even greater use of force than might be in the same circumstances required for self-defense." *Id.*

An officer's use of force is reasonable if the officer "has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id.* at 528 (quoting *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1103 (2004)).  The reasonableness analysis is "highly deferential to the police officer's need to protect himself and others." *Munoz v. City of Union City*, 120 Cal. App. 4th at 1103.

Here, Officer Green had probable cause to believe Diaz posed an immediate and significant threat of death or serious physical injury to himself and the other

officers.  As discussed in Section I above, Officer Green was forced to make a quick decision in the field, and acted in self-defense and defense of his fellow officers.  Officer Green's actions were reasonable and did not constitute a battery.  Accordingly, Officer Green is entitled to summary judgment on plaintiffs' Seventh Cause of Action based on battery.

### VII. OFFICER GREEN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' SIXTH CAUSE OF ACTION PURSUANT TO CALIFORNIA CIVIL CODE SECTION 52.1 BECAUSE THERE IS NO EVIDENCE THAT HE HAD A SPECIFIC INTENT TO VIOLATE DIAZ'S RIGHTS

Civil Code section 52.1 (the Bane Act) creates liability on persons who interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state.  Cal. Civ. Code § 52.1(a).  For the reasons discussed above, Officer Green did not violate any constitutional rights; therefore, plaintiffs' Bane Act claims fail.

In addition, to prove a Bane Act claim based on excessive force, a plaintiff must prove not only a constitutional violation, but also "a specific intent to violate the arrestee's right to freedom from unreasonable seizure."  *Reese v. Cty of Sacramento*, 888 F.3d at 1043 (quoting *Cornell v. City and Cty. of San Francisco*, 17 Cal. App. 4th 766, 801-802 (2017)); *see also*, *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 519-520 (9th Cir. 2018).  A mere intention to use force that a jury may ultimately find unreasonable is insufficient. *Id.* at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).  Rather, a plaintiff must prove that the defendants "intended not only the force, but its unreasonableness, its character as 'more than necessary under the circumstances."  *Id.*

Plaintiffs can provide no evidence of any specific intent by Officer Green to violate Diaz's constitutional rights.  Accordingly, Officer Green is entitled to summary judgment on plaintiffs' Sixth Cause of Action pursuant to California Civil Code Section 52.1.

15

**CONCLUSION**

Based on the foregoing, Officer Green respectfully requests that the court enter summary judgment, or, in the alterative, partial summary judgment, in his favor.

Dated:  December 2, 2020                    Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MARK T. CUMBA
Supervising Deputy Attorney General

s/ Donna M. Dean

DONNA M. DEAN
Deputy Attorney General
*Attorneys for Defendant*
*Brian Green*

LA2019502881
63778841.docx