**THE LAW OFFICES OF JOHN L. BURRIS**
JOHN L. BURRIS, Esq. (SBN 69888)
K. CHIKE ODIWE, Esq. (SBN 315109)
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
john.burris@johnburrislaw.com
chike.odiwe@johnburrislaw.com

**THE LAW OFFICES OF JOHN L. BURRIS**
DeWITT M. LACY, Esq. (SBN 258789)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, California 90212
Telephone: (310) 601-7070
Facsimile: (510) 839-3882
dewitt.lacy@johnburrislaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE DIAZ; and DIMAS DIAZ, individually; EDITH DIAZ, JESSE DIAZ; DAVID CHASE and D.A.D., a minor by and through her guardian ad litem Alexis Marie Olivarez, individually and as co-successors-in-interest to Decedent DIMAS DIAZ JR.,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>COUNTY OF VENTURA, a municipal corporation; NOEL JUAREZ, individually and in his official capacity as a sheriff's | Case No. 2:19-cv-04695-DMG-AGR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION**<br><br>Date:    January 8, 2021<br>Time:    3:00 p.m.<br>Ctrm:    8C<br><br>Judge:    Hon. Dolly M. Gee |

The Law Offices of John L. Burris
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

deputy for the Ventura County Sheriff's Department and DOES 1-50, inclusive, individually and in their official capacities as agents for the Ventura County Sheriff's Department; and BRIAN GREEN, individually and in his official capacity as California Highway Patrol Officer for the California Highway Patrol and DOES 51-65, inclusive, individually and in their official capacities as California Highway Patrol Officers,

Defendants.

Trial Date:    March 30, 2021
Action Filed:  May 30, 2019

**The Law Offices of John L. Burris**
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

# TABLE OF CONTENTS

Table of Authorities ...............................................................................................iv

Introduction ........................................................................................................1

Statement of Facts................................................................................................2

A. Mr. Diaz has an Altercation with his Girlfriend and Alights from the Police ..2

B. Mr. Diaz Appears to be Physically Injured and Suffering from a Mental Health Crisis ..................................................................................................................4

C. Officer Green Departs from Basic Police Tactics and Shoots Mr. Diaz ...........5

   1. Officer Green's Conduct Ran Afoul of Sound and Safe Police Protocols.....5

   2. Officer Green's Version of the Shooting ......................................................7

   3. The Event is Described Differently by Other Officers .................................7

   4. The Videos Contradict Officer Green's Story...............................................8

Argument ............................................................................................................9

A. Legal Standards................................................................................................9

B. Green Used Unreasonable Deadly Force on Diaz in Violation of the Fourth Amendment.........................................................................................................11

Legal Standards ..................................................................................................11

Graham Analysis ...................................................................................................... 12

   1. It was Unreasonable for Green to Have Perceived a Gun ............................... 13

   2. Officer Green Should Have Perceived that Mr. Diaz was Injured .................. 14

   3. Officer Green Created the Urgency that he Felt ............................................. 15

   4. Officer Green Failed to Utilize Less Intrusive Alternatives .......................... 16

   5. Mr. Diaz was Clearly Emotionally Disturbed ............................................... 17

   6. Other Factors Favor Plaintiffs ...................................................................... 17

C. Green's Violation was Clearly Established at the Time of the Shooting .......... 18

D. Green's Conduct Shocks the Conscience .......................................................... 22

E. Green is Liable for Diaz's Wrongful Death ...................................................... 23

F. The Same Questions of Material Fact Preclude Summary Judgment on
Plaintiffs' Battery Claim .................................................................................... 24

G. Plaintiffs' Bane Act Claim Also Survives Summary Judgment ....................... 25

Conclusion ............................................................................................................... 25

The Law Offices of John L. Burris

9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

1

# TABLE OF AUTHORITIES

2

**Cases**

3   *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005 (9th Cir. 2016) ........11, 12

4   *Anderson v. Creighton*, 483 U.S. 635 (1987) .........................................................19

5   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................9

6   *Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001) ................................................22

7   *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)..............................................................19

8   *Barnes v. City of Pasadena*, 508 Fed.Appx. 663 (9th Cir. 2013) ..........................22

9   *Brown v. Ransweiler*, 171 Cal.App.4th 516 (2009) ...............................................24

10  *Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010)............................................12

11  *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766 (2017) ..................26

12  *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001) .............................15, 18, 20

13  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992)..................10

14  *Edson v. City of Anaheim,* 63 Cal.App.4th 1269 (1998) ........................................25

15  *Estate of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998

16  (9th Cir. 2017) ...............................................................................12, 19, 21, 22

17  *Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2013) ...............................................10

18  *Garcia v. County of Merced*, 639 F.3d 1206 (9th Cir. 2011)................................10

19  *Glenn v. Washington Cty.*, 673 F.3d 864 (9th Cir. 2011)..........................10, 12, 18

20  *Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014) ...............13, 15, 18, 22

21  *Graham v. Connor*, 490 U.S. 386 (1989) ......................................................passim

22  *Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013)........................14, 23

23  *Headwaters Forest Defense v. Cnty. of Humboldt*, 240 F.3d 1185 (9th Cir. 2000)17

24  *Hope v. Pelzer*, 536 U.S. 730 (2002).....................................................................19

25  *Howard v. County of Riverside*, 2014 WL 12589650 (CD Cal. 2014) ...................24

26  *Keenan v. Allan*, 91 F.3d 1275 (9th Cir. 1996) .....................................................10

27  *Lal v. California*, 746 F.3d 1112 (9th Cir. 2014) ..................................................10

28  *Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir. 2005) ...............................18

**The Law Offices of John L. Burris**
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

*Nelson v. City of Davis*, 709 F.Supp.2d 978 (ED Cal. 2010) ...................................25

*Newmaker v. City of Fortuna*, 842 F.3d 1108 (9th Cir. 2016) ...............................11

*Nunez v. City of San Jose*, 381 F. Supp. 3d 1192 (N.D. Cal. 2019)......................25

*Pearson v. Callahan*, 555 U.S. 223 (2009) ............................................19

*Plumhoff v. Rickard,* 134 S.Ct 2012 (2014) ................................... 13, 19

*Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008)...................................15, 22

*Reese v. Cty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018)................................25

*S.B. v. Cty. of San Diego*, 864 F.3d 1010 (9th Cir. 2017) .....................................20

*S.R. Nehad v. Browder*, 929 F.3d 1125 (9th Cir. 2019) ..............................passim

*Scott v. Harris*, 550 U.S. 372 (2007) ...........................................10

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005)...................................13

*Stoddard-Nunez v. City of Hayward*, 817 F. App'x 375 (9th Cir. 2020)................10

*Tennessee v. Garner,* 471 U.S. 1 (1985) ...........................................18

*Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011) ...............................12, 15

*Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018) .......................21, 25

*Woodward v. Tucson*, 870 F.3d 1154 (9th Cir. 2017)......................................20

**Statutes**

California Civil Code Section 52.1...........................................25

Federal Rules of Civil Procedure 56(a) ...................................9

The Law Offices of John L. Burris
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

PG. v          Case No.  2:19-cv-04695-DMG-AGR

**INTRODUCTION**

Plaintiffs Rose Diaz, et al. brought this action arising from the unlawful shooting of their son, father, and spouse, Dimas Diaz, by Defendant California Highway Patrol Officer Brian Green on January 12, 2019. Diaz had an altercation with his girlfriend and when Ventura County Sheriff's Deputies responded to the scene he alighted from them in his car. The deputies, including a helicopter officer, pursued him. The pursuit, ensuing encounter, and ultimate fatal shooting were caught on multiple videos from multiple angles.

Defendant Officer Green and other CHP officers took over the pursuit on the 101 and soon called it off due to weather and public safety concerns. Just then, Mr. Diaz swerved through all four lanes of traffic and crashed into a guardrail on the right shoulder of the highway. Mr. Diaz exited his car, disheveled, and appearing injured, as he writhed in agony and coddled his right arm. He also acted erratically, such as, pacing back and forth, sitting in the rear passenger seat of his car while looking up at the sky. At least five different officers had guns and rifles trained on him and the helicopter continuously circled overhead.

After forty minutes of this posture, the commanding officer ordered the deployment of less lethal force, and an officer fired a less lethal bean bag round at Diaz causing him to fall backwards and to the ground. Mr. Diaz began to stagger back to his feet, still coddling his right arm and apparently picking up a piece of black plastic debris from the car crash with his left hand. However, Officer Green appeared to lose sight of reality and went rogue in his response to Mr. Diaz. Instead of awaiting further commands from the commanding sergeant and redeployment of another less lethal round, which had already proven to be effective, Defendant Green lost sight of his fellow officers and stepped directly across three officers' line of fire - including the less lethal officer. Defendant Green claims to see a "knife" when there is nothing resembling a knife in his view. Thereafter, he claims the same object he once believed to be a shiny blade

The Law Offices of John L. Burris
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

suddenly morphed into the dark barrel of a gun. Defendant then shot Mr. Diaz multiple times with an AR-15 rifle. Evidence demonstrates that one of the initial shots was either to Mr. Diaz's left arm or his torso, causing the object to drop from his hand. With Mr. Diaz effectively "disarmed," Defendant Green continued to shoot Diaz even after he had fallen to the ground. One of the shots delivered while Diaz was on the ground struck Diaz in his head, killing him instantly.

Defendant Green admitted to experiencing tunnel vision after the initial less lethal round was deployed. Green admitted that he could not hear anyone after the deployment of the initial less lethal round. He admitted he did not know what the other officers were doing and was unaware of where they were positioned. Ultimately, Defendant Green does not heed the direction of his commanding officer and simultaneously fires several rounds from his rifle killing Mr. Diaz.

Officer Green unreasonably used deadly force on Decedent Diaz who: was obviously injured, appeared to be suffering from a mental health crisis, clearly did not have a weapon in his hand at the time he was shot, and was disarmed at the time of subsequent shots. Plaintiffs maintain that Officer Green's overwrought perception that Mr. Diaz was armed with a knife-turned-barrel-of-a-gun are unreasonable mistakes of fact that every reasonable officer would know was unreasonable. Plaintiffs' Opposition to Defendant's Motion for Summary Judgment is based on the arguments made below, on Plaintiffs' Responses to Defendant's Statement of Undisputed Facts and Plaintiffs' Additional Undisputed Facts, on the Declaration of DeWitt M. Lacy (hereinafter "D. Lacy Decl.") in Support of Plaintiffs' Opposition, filed herewith and all exhibits attached thereto, on the Court's file in this matter, and on any such oral and/or documentary evidence presented at the hearing on this motion.

## STATEMENT OF FACTS

### A.    Mr. Diaz has an Altercation with his Girlfriend and Alights from the Police

**The Law Offices of John L. Burris**
9701 Wilshire Blvd, Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070



On January 12, 2019, at approximately ten a.m. Dimas Diaz had an altercation with his girlfriend ████████████ in front of her home in ██████████. ██

████████████████████████ Ventura County Sheriff's Deputies responded to a call reporting domestic violence and when they arrived, they observed Mr. Diaz sitting in the driver seat of a silver Chrysler and ███████████ standing just outside the vehicle but near the driver's seat facing the rear of the vehicle. █████████

████████████████████████; see also, Exhibit G the CHP Incident Report pertaining to this incident at CHP000558 [All "CHP" references hereafter are Exhibit G].) Upon seeing the Deputy arrive, Mr. Diaz pushed Ms. ██████ away from the vehicle and drove off. (CHP000558.) Ms. ██████ did not appear injured, so the Deputy gave chase and a lengthy and at times high-speed chase ensued. (CHP000558.)

Defendant CHP Officer Brian Green heard about the pursuit through dispatch, stopped what he was doing and got into position to take over the pursuit as it headed toward his location. (See Exhibit E - Brian Green Deposition at 59:16-60:17, 60:22-61:23, hereinafter "Green Depo".) It had been raining and traffic was light so Officer Green drove normally without lights and sirens. (Green Depo 62:15-22.) Officer Green joined the pursuit with three other patrol cars. (Green Depo 70:7-24.) Officer Green was the officer-in-charge that day and took over the pursuit, first telling his fellow officers to sustain the pursuit. (Green Depo 61:13, 72:12-22, 77:19-78:1, 79:19-21.)

During the pursuit, dispatch informed that Mr. Diaz was driving a stolen car, and that the car had been rented from Hertz by a woman. (CHP000545, CHP000599.) The dispatch also reported that Mr. Diaz had local warrants which cautioned that he was armed and dangerous, he was a parolee with a no bail warrant, and that he had psych concerns. (CHP000059, Green Depo 73:9-17, CHP000830, CHP000599, CHP000600, CHP000012, CHP000014, CHP0000590.)

The Law Offices of John L. Burris
9701 Wilshire Blvd, Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

Officer Green canceled the pursuit due to the rain and traffic safety, and he asked the helicopter to continue following Mr. Diaz. (Green Depo 78:14-23, 79:13-18, CHP000014.) Almost immediately thereafter, Mr. Diaz lost control of his car, swerved from the center divider to the right shoulder of the highway, and crashed into the guardrail, nearly perpendicular to the freeway. (Green Depo 80:19-81:11, Exhibit L - Video of the Ventura County Sheriff's Department Air Unit Pursuit 011219.ts [hereinafter "Helio Video"]; Exhibit A - YouTube Video 1 [hereinafter "1YouTube"]; Exhibit B - YouTube Video 2 [hereinafter "2YouTube"].)

**B. Mr. Diaz Appears to be Physically Injured and Suffering from a Mental Health Crisis**

The helicopter video shows that after the collision, Mr. Diaz hops over the guardrail as if to alight on foot and then runs back to the driver's side of the car, while the patrol cars circle him on the passenger side. (Helio Video at 29:10; CHP000881.) After crawling back under the guardrail, Mr. Diaz attempts to open the driver door while his right arm hangs limply at his side. (Helio Video at 29:25.)  He falls and tries to brace himself on the ground and then attempts to open either of the car doors with his right hand but appears unable to do so. (Helio Video at 29:23-30:12.) Mr. Diaz then appears to be writhing in agony as he bangs his head on the top of the car and stomps his foot on the ground. (2YouTube at 50-1:00.) Mr. Diaz places his right hand in his jacket pocket as though to immobilize his right arm and appears to favor his left arm as though his right is injured. (1YouTube at 0.26, 3:18; 2YouTube at 1.03, 2:20, 3:35, 3:47.) Mr. Diaz never takes his right hand out of his pocket and never utilizes his right arm again during the remainder of his encounter with the officers. (1YouTube Video; 2YouTube Video; Helio Video.) Indeed, an officer reported to dispatch that it was unclear

The Law Offices of John L. Burris
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

whether Mr. Diaz's right arm was injured or had a weapon in his right pocket. (CAD entry 11:55:08 at CHP000060, Hartkop Video at 10:30-42.)

Mr. Diaz paces back and forth, variously gets in and out of his vehicle and appears disheveled and disoriented. (1YouTube Video; 2YouTube Video; Helio Video; CHP000812.) Given his apparent inability to stay still or focus, Mr. Diaz also appears to be either concussed from the collision, under the influence of drugs, and/or experiencing a mental health crisis. (1YouTube Video; 2YouTube Video; Helio Video.) The officers observed Mr. Diaz in this disoriented state for nearly an hour. (CHP000015; CHP000848-849; CHP000882-884; Helio Video, passim.) During this time, Officer Green never asked Mr. Diaz whether he was hurt or injured. (Green Depo 88:24-89:12.)

There is a lot of litter and debris (some from the collision) near Mr. Diaz and the vehicle, and generally, on the shoulder of the freeway. (Helio Video at 29:41, 37:42, 42; Hartkop at 20:23, 26:40.) None of the debris is metallic nor appears to be a knife. (Helio Video at 29:41, 37:42, 42; Hartkop at 20:23, 26:40.) Indeed, the helicopter video zooms in on a piece of black plastic that is near the rear left of the Chrysler very shortly after the collision. (Helio Video at 42.) This black object never moves from the ground throughout the encounter and is found next to Mr. Diaz's leg after he is shot. (Helio video, passim; CHP000573; CHP000604; CHP000614; CHP000983-984.)

## C. Officer Green Departs From Basic Police Tactics and Shoots Mr. Diaz

The helicopter left the scene to refuel and Mr. Diaz appeared to calm down. (1Youtube at 255 - 3:13; 2YouTube at 10:29-11:00)

### 1. Officer Green's Conduct Ran Afoul of Sound and Safe Police Protocols

CHP Sergeant Monteagudo and Officer Pineda arrived on the scene at approximately the same time. (Green Depo 84:6-10, 93:20-25.) Sergeant Monteagudo took charge of the scene (effectively relieving Officer Green of being the officer-in-charge) and informed Green that they were going to use the less-

The Law Offices of John L. Burris
9701 Wilshire Blvd, Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

The Law Offices of John L. Burris
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

1 lethal bean bag shotgun on Mr. Diaz. (Decl. of Monteagudo ¶ 3; Green Depo
2 83:23-84:1, 93:15-94:12.) Sergeant Monteagudo went to each officer on the scene
3 and informed them that they were going to use the "less lethal" bean bag shotgun.
4 (Decl. of Monteagudo ¶ 4; Green Depo 93:12-94:12, 96:3-8; CHP000759;
5 CHP000811; CHP000866; CHP000953-954; CHP000982.)

6     Officer Green testified that the theory behind using the less lethal is that when
7 one officer uses it, it gives the other officers the opportunity to affect the arrest.
8 (Green Depo 111:9-25.) The less lethal officer is backed up by lethal cover officers
9 who carry their firearms. (Green Depo 116:15-20.) The less lethal officer decides
10 when and how many times to use the less lethal shotgun. (Green Depo 113:7-18.)
11 Here, the officers' plan was to use the less lethal and then affect the arrest. (Green
12 Depo 117:9-13.)

13     Officer Pineda announced "less lethal" and effectively deployed the less lethal;
14 that is, the bean bag round struck Mr. Diaz and caused him to fall to the ground on
15 his back with his feet flying up.  (Green Depo 96:13-18; 1YouTube at 3:12;
16 CHP000960.) The officers then began to approach Mr. Diaz. (Green Depo 96:19-
17 22; 1YouTube at 3:20; 2YouTube at 11:05-11:30.) According to Officer Green, as
18 he approached Mr. Diaz, he maintained 20-30 feet distance from him. (Green Depo
19 101:19-102:4.) He side-stepped to the left with his rifle in ready position and
20 looked over his rifle at Mr. Diaz. (Green Depo 97:3-98:16.)  Officer Green was so
21 singularly focused on Mr. Diaz that he stepped into his fellow officers' line of fire
22 (CHP000982 at 13- 22; CHP000983 at 2-4), causing them to yell, "Crossfire,
23 crossfire, crossfire!" (See Exhibit K - Ventura County Sheriff Deputy Sergeant
24 Alan Hartkop's Body Cam Video at 26:09 ("Hartkop Video"); CHP000774;
25 CHP000982.) At this point, Officer Green is exposed and without the cover of his
26 patrol car, even though the officers he has cut off from sight and fire power are still
27 covered. (Hartkop Video at 4:58; 14:40,15:48-16:05; 26:10.)
28     At this point the versions of the event vary.

The Law Offices of John L. Burris
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

2.    *Officer Green's Version of the Shooting*

Officer Green could not see Mr. Diaz's hands but he observed a blade on the ground near his body. (Green Depo 97:3-99:17.) Officer Green yelled "Knife" repeatedly. (Green Depo 101:4-18.) Officer Green testified that after Mr. Diaz was struck with the less lethal round, that he rolled on the ground, hopped to his feet, doubled over while he was standing, and then Officer Green heard a second less lethal round fired. (Green Depo 102:23-103:115.) After the second round, Mr. Diaz extended his left hand, pointed the barrel of a gun at Officer Green and lunged at the officer. (Green Depo 103:16-25.) Officer Green yelled "Gun" and fired his AR-15 rifle four times. (Green Depo 94:13-17, 104:1-9.) Mr. Diaz fell to the ground after Officer Green shot him. (Green Depo 104:10-19.) In explaining what he observed in Mr. Diaz's hand, Officer Green testified, that he a blade on the ground next to Mr. Diaz and when he stood up it was the barrel of a gun in his hand. (Green Depo 105:5-10 ("When I saw the blade on the ground it looks to me that's what he had in his hand that looked like the barrel of the gun.")

3.    *The Event is Described Differently by Other Officers*

However, CHP Sergeant Michael Monteagudo declared the sequence of events occurred as follows: Officer Pineda fired a less lethal bean bag round, Mr. Diaz dropped to the ground, the officers started moving in on him, Mr. Diaz got up and advanced toward the officers with an object in his hand, someone yelled "Knife, knife, knife," Pineda yelled "less lethal," a second less lethal round was deployed, and then he heard more rounds fired and saw the suspect go down. (Decl. of Monteagudo ¶ 5, Document 67-4.) Sergeant Monteagudo does not: 1) see a blade on the ground as he approaches Mr. Diaz, 2) hear anyone say "Gun," nor 3) see the barrel of a gun in Mr. Diaz's hand. (*Id.*) Indeed, none of the other officers reporting hearing someone call out "gun." (CHP000774; CHP000813; CHP000851; CHP000906; CHP000931)

**The Law Offices of John L. Burris**
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

Officer Pineda, the less lethal shooter, stated that Mr. Diaz was beginning to get up but was "flailing." (CHP000904.) Officer Pineda did not claim to see Mr. Diaz lunging. Moreover, Officer Pineda saw Mr. Diaz's "flailing" to his advantage to come in for his second less lethal shot. (CHP000906.) This is precisely what less lethal was brought in to accomplish - to give the other officers the opportunity to affect the arrest while being backed up by lethal cover. (Green Depo 111:9-25, 116:15-20.) In side-stepping to his left, Officer Green moved in front of Officer Pineda instead of allowing Officer Hartkop to provide safe and effective lethal cover.

4.    *The Videos Contradict Officer Green's Story*

The videos of the incident depart even further from Officer Green's version of the shooting. There is no blade or knife on the ground near Mr. Diaz. (Hartkop Video 26:20; CHP000573, CHP000604.) He picks up a piece of debris--not the center console piece that remains on the ground near the rear tire for the whole encounter. (Hartkop Video at 0:15.) Mr. Diaz does not lunge at the officers; he was "flailing" forward trying to get upright without the use of his right arm. (1YouTube at 3:10-3:20; CHP000906.) Instead, when he attempts to stand after being shot with the first less lethal round, Mr. Diaz does not stand upright nor gain his balance - still favoring his obviously injured right arm that remains braced in his jacket pocket. (1YouTube at 3:10-20.) Officer Green is not heard yelling "gun", and none of the other officers respond as though they see Mr. Diaz with a gun or hear Green yell gun. (1YouTube at 3:26, 2YouTube at 10:50.) The second less lethal and the first shot from the rifle are fired virtually simultaneously. (CHP000771-772; CHP000813-814; 1YouTube at 3:19; 2YouTube at 11:15.) The shot to Mr. Diaz's left arm occurs while he is still on his feet and causes the object to fly out of his hand. (CHP000815; See Deposition of Los Angeles County Medical Examiner Zuhha Ashraf at 35:7-8, hereinafter "Ashraf Depo".) Some of the shots occur while Mr. Diaz is on the ground with his back to the officers; indeed, Mr. Diaz suffered

at least one gunshot wound from behind. (Exhibit D, Los Angeles County Medical Examiner's Report, No. 2019-00338 "Autopsy Report" at CHP000078; Ashraf Depo at 24:21-22.)

Mr. Diaz was not armed with a knife nor a gun. (Green Depo 105:16-106:1, 117:18-118:12.) He suffered at least 7 gunshot wounds, including one to the head and one to the right chest that were both rapidly fatal. (Ashraf Depo 29:5-30:7, 34:11-25 and 35:18-25.) The medical examiner noted that Mr. Diaz's left humerus bone was fractured likely due to the great force of the high-speed collision into the guardrail.[1] (Ashraf Depo 28:10-25.)

## ARGUMENT

## A.    LEGAL STANDARD

Summary judgment is appropriate where the record, read in the light most favorable to the non-movant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts may affect the outcome of the case. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.") A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for

[1] Plaintiffs note that even though the medical examiner identified that Mr. Diaz's left humerus was broken, he consistently behaved as though his right humerus was broken, because he immobilizes his right arm and never moves it, including not even to tie his shoes while in the back seat; whereas, he constantly moves his left arm including lifts it above his head. (1YouTube at 0:20, 0:26, 3:18, 3:21; 2YouTube at 0:18, 0:52, 1:03. 2:20, 3:35, 3:47, 8:22, 10:36; Helio Video at 29-33:26, 38:04, 50:15.)

The Law Offices of John L. Burris
9701 Wilshire Blvd, Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

trial." *Id.* (citing Fed.R.Civ.P., Rule 56(e)). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

In determining whether summary judgment is appropriate, the court does not make credibility determinations, or weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). This Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in its favor (*Lal v. California*, 746 F.3d 1112, 1115–16 (9th Cir. 2014) (quoting *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011)). At the summary judgment stage, courts "do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2013), see e.g., *Stoddard-Nunez v. City of Hayward*, 817 F. App'x 375, 378 (9th Cir. 2020) (considering video police interview of percipient witness on summary judgment).

When, as here, there is video evidence of the incident giving rise to the excessive force claim, a court must "view[ ] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Nonetheless, even where video evidence exists, the circumstances may be such that reasonable factfinders could draw divergent conclusions from what the video evidence shows. *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1132–39 (9th Cir. 2019) (disputed issues of material fact precluded summary judgment in an action alleging excessive use of force even though the evidence included surveillance footage); *Glenn v. Washington Cty.*, 673 F.3d 864, 878 (9th Cir. 2011) ("The circumstances of this case can be viewed in various ways, and a jury should have the opportunity to assess the reasonableness of the force used after hearing all the evidence.").

## B. GREEN USED UNREASONABLE DEADLY FORCE ON DIAZ IN VIOLATION OF THE FOURTH AMENDMENT

The Law Offices of John L. Burris
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

When viewed in the light favorable to Plaintiffs, Officer Green was overwrought by the incident and allowed his cautious suspicion that Mr. Diaz was armed to become an unsubstantiated truth ignoring the information from the helicopter officer that Diaz's right arm appeared injured; he became so singularly focused on seeing what was in Diaz's obviously injured right arm and hand that he departed from his training by leaving his position of cover, crossed his fellow officers' line of fire, and believed that he nearly shot one of his fellow officers; and he departed from the team's plan to use the less lethal by firing his own rifle. And he continued shooting Diaz after the object in his hand dropped and as Diaz was on the ground with his back to the officers. Against this factual backdrop, Officer Green's use of deadly force was clearly unreasonable.

### Legal Standards

To determine whether Officer Green's use of force was objectively reasonable, this court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks and citations omitted). This analysis involves three steps: 1) assess the severity of the intrusion by evaluating the type and amount of force inflicted; 2) evaluate the government's interest in the use of force, and 3) balance the gravity of the intrusion on the individual against the government's need for that intrusion. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016).

The strength of the government's interest is measured by reference to three factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016) (internal quotation marks and citation omitted). This list is "non-exhaustive"; "[c]ourts still must 'examine the totality of the circumstances and consider whatever specific

The Law Offices of John L. Burris
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

The Law Offices of John L. Burris
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

factors may be appropriate in a particular case, whether or not listed in Graham.'"
*Estate of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017)
(quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)). Other relevant
factors include the availability of less intrusive alternatives to the force employed,
whether proper warnings were given, and whether it should have been apparent to
the officer that the person was emotionally disturbed. See, e.g., *Glenn v.
Washington County*, 673 F.3d at 872.

Courts "do not judge the reasonableness of an officer's actions with the 20/20
vision of hindsight, nor does the Constitution forgive an officer's every mistake."
*Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011) (internal quotation
marks and citations omitted). When an officer's actions are based on a mistake of
fact, the court must determine whether a reasonable officer should have accurately
perceived that fact.

**Graham Analysis**

*Nature of the Intrusion*: Officer Green shot Mr. Diaz to death. Clearly, the
severity of this intrusion on Diaz's Fourth Amendment interests was "extreme" and
"unmatched." *A.K.H. ex rel. Landeros*, 837 F.3d at 1011.

*Governmental Interests*: The second step is to determine the government's
countervailing interests at stake. *Graham*, 490 U.S. at 396.[2]

---

[2] Defendant includes that Mr. Diaz was driving under the influence of
methamphetamine to the list of his underlying offenses. Plaintiffs dispute that Mr.
Diaz was under the influence as the toxicologist was not able to determine if
Decedent was under the influence of methamphetamine. (See Deposition of Jorge
Posada at 51:17-52:9, 52:10-17, Exhibit M.) But this is not properly considered in
the Graham analysis because Officer Green did not know or opine that he was
under the influence at the time of the incident. Hayes v. County of San Diego, 736
F.3d 1223, 1232–33 (9th Cir. 2013) ( "[W]hen analyzing the objective
reasonableness of the officers' conduct under Graham, we cannot consider [facts
unknown to the officers at the time].")

1     Here, Mr. Diaz's underlying crime concerned a domestic violence call, which

2   by itself is not particularly severe and had long since been over at the time of the

3   shooting. *Smith v. City of Hemet*, 394 F.3d 689, 702–03 (9th Cir. 2005) (where a

4   suspect had physically assaulted his wife but was standing alone on his porch when

5   officers arrived, "nature of the crime at issue provid[ed] little, if any, basis" for use

6   of force). Although leading police on a high-speed chase is inherently dangerous

7   and serious, that offense also had long since been over at the time of Officer

8   Green's use of force. *Id*.

9     *Immediate Threat*: "The most important *Graham* factor is whether the suspect

10  posed an immediate threat to anyone's safety." *Nehad*, 929 F.3d at 1132. Deadly

11  force is not warranted simply because a suspect is aimed. *Id.* at 1134. "Instead, the

12  relevant inquiry is whether the suspect "pose[d] a significant threat of death or

13  serious physical injury to the officer or others." *Gonzalez v. City of Anaheim*, 747

14  F.3d 789, 793 (9th Cir. 2014).

15    Determining whether Mr. Diaz was an immediate threat is a question of fact

16  that precludes summary judgment.

17  ### 1.  It was Unreasonable for Officer Green to Have Perceived a Gun

18    Officer Green's explanation for his use of force strains credulity. He claims to

19  see a blade on the ground near Mr. Diaz. And then when Mr. Diaz stands and has

20  that object in his hand, that same object which appeared to be a blade transformed

21  into the barrel of a gun. First, it is undisputed that the object in Mr. Diaz's hand

22  was not a gun. (Green Depo 105:16-106:1.) And there was no knife near Mr. Diaz

23  either. (Monteagudo Decl. ¶ 5.) Second, the other officers on the scene that

24  observed an object in Mr. Diaz's hand declined to use deadly force. See *Plumhoff*

25  *v. Rickard,* 134 S.Ct 2012, 2020 (2014) ("We analyze [the objective

26  reasonableness] question from the perspective of a reasonable officer on the scene"

27  (internal quotation marks omitted)). Indeed, these officers either called for and shot

28

The Law Offices of John L. Burris
9701 Wilshire Blvd, Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

the less lethal or allowed the less lethal officer to redeploy. (Monteagudo Decl.
¶5.)

The black plastic object does not even resemble a knife and the finder of fact
could determine that it was unreasonable for Officer Green to have perceived a
blade. Even if the object was a knife, deadly force was unreasonable, because
Officer Green was 20 -30 feet away clearly not within striking distance of a knife,
and moreover, the less lethal had proven effective. *Hayes v. County of San Diego*,
736 F.3d 1223, 1233 (9th Cir. 2013). Furthermore, Officer Green is not heard
yelling "gun" prior to the shooting on any of the videos nor by his fellow officers.
According to Sergeant Monteagudo, after the initial less lethal round, he heard
someone yell "knife," Sergeant Pineda yelled "less lethal" and fired a second round
which was immediately followed by gunfire. (Monteagudo Decl. ¶5.) And another
officer yells "Where is the knife?  Where is the knife?' after the shooting while
searching Mr. Diaz's corpse. (Hartkop Video at 26:15.) A finder of fact can
determine that Officer Green did not perceive a gun, never uttered "gun" and only
claimed to have seen a gun once he realized that Mr. Diaz was unarmed.

**2.      *Officer Green should have perceived that Mr. Diaz was injured***

Officer Green testified that Mr. Diaz keeping his right hand in his pocket
made him believe that he was concealing a weapon. However, the helicopter
officer informed the ground officers that Diaz could have his right hand in his
jacket pocket because he was injured. (Hartkop at 10:43.) Officer Green observed
Mr. Diaz's crash into the guardrail at a significant speed, and as a highway patrol
officer of twenty years, he would have particular knowledge that such a crash
could likely cause significant injury. Indeed, Mr. Diaz appears to writhe in agony
as a result of the collision. Officer Green never attempted to determine if Mr. Diaz
was injured. (Green Depo 89:3-12.) Officer Green's direct observations of Mr.
Diaz's behaviors also indicated that he was injured. For example, Diaz raised only
his left hand in response to the officers' commands to raise his hands. (Green Depo

The Law Offices of John L. Burris
9701 Wilshire Blvd, Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

The Law Offices of John L. Burris

9701 Wilshire Blvd, Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

85:22-86:1; CHP000949.) And he never removed his right hand from his pocket, not even when he fell to the ground from the less lethal round. (1YouTube at 3:20; CHP000852.)

Mr. Diaz's injury rendered him unbalanced and unable to stand and right himself. During his OIS interview, Officer Green informed that Mr. Diaz formed a tripod in order to stand after being hit with the less lethal. That is, he was crouched on his feet and placed his left hand on the ground to stand, all while his right hand is still in his pocket. (Green OIS Interview p. 246, 252-253, CHP 000955, 000961-962.) A jury could find that Mr. Diaz did not run or lunge at the officers, but was disoriented from the less lethal round and was stumbling from its effects. *S.R. Nehad v. Browder*, 929 F.3d at 1132–39. More significantly, a jury could also find Officer Pineda's description of "flailing" as more accurate or reliable.  (CHP000906.)

### 3.    *Officer Green Created the Urgency that he Felt*

The Ninth Circuit recently explained that the latitude *Graham* requires for split-second judgments does not apply where the officer creates the sense of urgency:

> We recognize, as we have often done before, that officers must act "without the benefit of 20/20 hindsight," and must often make "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Gonzalez v. City of Anaheim*, 747 F.3d at 794 (quoting *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865); *see also Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001). Sometimes, however, officers themselves may "unnecessarily create their own sense of urgency." *Torres v. City of Madera*, 648 F.3d 1119, 1127 (9th Cir. 2011); *see also Porter v. Osborn*, 546 F.3d 1131, 1141 (9th Cir. 2008) ("When an officer creates the very emergency he then resorts to deadly force to resolve, he is not simply responding to a preexisting situation."). Reasonable triers of fact can, taking the totality of the circumstances into account, conclude that an officer's poor judgment or lack of preparedness caused him or her to act unreasonably, "with undue haste." *Torres*, 648 F.3d at 1126.

*Nehad*, 929 F.3d 1125, 1135 (footnote and internal brackets excluded).

Here, Officer Green admits to being so singularly focused on Mr. Diaz and his right hand that he did not pay attention to his fellow officers, and thought he may have nearly shot one of them. (CHP000961-964.) Green obviously departed from basic police practice training and protocol by abandoning his position of cover in his approach to Mr. Diaz. For example, Officer Fary declined to walk straight forward Mr. Diaz because he could not see him. (CHP000850.) Officer Hartkop is heard instructing a fellow officer to drop down if Mr. Diaz started to shoot, and explained that he had the best line of sight on Mr. Diaz and had the patrol car engine block for cover. (Hartkop Video at 0:42, 1:44, 1:46, 8:05, 16.) Moreover, Officer Hartkop confirms with the helicopter officer that the CHP officers had no line of sight from their vantage point moments prior to the shooting. (Hartkop Video at 0:42, 1:44, 1:46.) In addition, Officer Pineda fired the first less lethal round from the "V" of the passenger door of the vehicle that Officer Hartkop was using as cover because it had the best vantage point. (Hartkop Video at 18-20:30; CHP000904.)

Officer Green entered his fellow officers' line of fire causing them to yell "crossfire, crossfire, crossfire" at him as he approached Mr. Diaz. And a reasonable finder of fact could determine that Officer Green also abandoned the team's strategic plan by contravening the less lethal officer's announcement that he was deploying the less lethal and firing his rifle.

During his OIS interview, Officer Green repeatedly stated that he was "terrified," "I was exposed," "scared to death," "was out in the open, no cover, no concealment" and he expressed that he "felt like [he] was on an island." (CHP000963-966.) Not only did Officer Green cross the line of fire established by his fellow officers, he also placed himself in a position of no cover without being able to see the threat. Clearly, had Officer Green not abandoned his position of cover and departed from the standard police practices that his fellow officers were

The Law Offices of John L. Burris
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

adhering to, and allowed the less lethal officer to redeploy, he would not have felt the sense of urgency that he experienced.

### 4.  *Officer Green Failed to Utilize Less Intrusive Alternatives*

An officer is not required to use "the least intrusive means of responding to an exigent situation; [he] need only act within that range of conduct we identify as reasonable." *Scott*, 39 F.3d at 915. However, "police are required to consider what other tactics if any were available to effect the arrest." *Headwaters Forest Defense v. Cnty. of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000). Here, the less lethal bean bag shotgun was effective in knocking Diaz to the ground. A reasonable finder of fact can determine that Officer Green fired his rifle at the same time that Officer Pineda was calling for and firing the less lethal. As such, a finder of fact could determine that Officer Green's failure to utilize less intrusive means was unreasonable.

### 5.  *Mr. Diaz was Clearly Emotionally Disturbed*

Officer Green knew that Mr. Diaz had a history of psych issues. Officer Green testified that Diaz was distraught about never seeing his children again and was agitated at the presence of the helicopter. Green testified and the videos show that Diaz could not stay still, he paced back and forth and behaved very erratic. And Diaz only calmed down when the helicopter stopped circling. (Green Depo 90:3-91:3.) Given the totality of the circumstances, a finder of fact could determine that Mr. Diaz's actions were more consistent with someone who was not mentally well.

Even crediting Officer Green's testimony that Diaz goaded him into believing that he was armed with a gun, "when an emotionally disturbed individual is 'acting out' and inviting officers to use deadly force to subdue him, the governmental interest in using such force is diminished by the fact that the officers are confronted, not with a person who has committed a serious crime against others,

The Law Offices of John L. Burris
9701 Wilshire Blvd, Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

but with a mentally ill individual." *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001). This factor weighs against Officer Green's use of deadly force.

### 6.    Other Factors Favor Plaintiffs

Officer Green did not warn Mr. Diaz that he would use deadly force if he did not drop the object in his hand. *Gonzalez v. City of Anaheim*, 747 F.3d at (en banc) ("[W]e have recognized that an officer must give a warning before using deadly force 'whenever practicable.'"). The dozens of orders that the officers hurled at Mr. Diaz are not equivalent to a warning that deadly force may be used. See e.g., *Mercado v. City of Orlando*, 407 F.3d 1152, 1154 (11th Cir. 2005) ("The officers identified themselves and ordered Mercado to drop his knife at least two times (once in English and once in Spanish), but he refused without making any threatening moves toward the officers. At no time did the officers warn Mercado that force would be used if he did not drop his weapon").

*Balancing the Graham Factors*: Finally, the court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Glenn*, 673 F.3d at 871. Again, the intrusion of deadly force is "unmatched" and at the "highest level", and even if an officer has probable cause to seize a suspect, it still may be unconstitutional to do so by using deadly force. *Tennessee v. Garner,* 471 U.S. 1, 8, 11 (1985). Here, Mr. Diaz committed some serious offenses hours prior to Officer Green's use of force that did not result in serious injuries to anyone. As a result of the collision, Mr. Diaz was injured, cornered; and most importantly, he was unarmed. Even if he managed to fend off a police attack by immobilizing his right arm and blustering that that posture meant something ominous, that he was provoking the police into a violent confrontation does make it okay for Officer Green to oblige based on no objective evidence that threat was real.

**The Law Offices of John L. Burris**
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

1    Clearly, a finder of fact could determine that Officer Green's use of deadly

2 force was unreasonable. As such, this Court should deny Defendant's motion for

3 summary judgment.

4    C.  **GREEN'S VIOLATION WAS CLEARLY ESTABLISHED AT THE**

5    **TIME OF THE SHOOTING**

6    Public officials are immune from suit under 42 U.S.C. § 1983 unless they

7 have "violated a statutory or constitutional right that was clearly established at the

8 time of the challenged conduct." *Plumhoff v. Rickard*, 134 S.Ct at 2023. To

9 determine whether a government official is entitled to qualified immunity, this

10 Court must determine whether: (1) the facts that a plaintiff has alleged or proved

11 show a violation of a constitutional right, and (2) the right at issue was clearly

12 established at the time of the defendant's alleged misconduct. See *Pearson v.*

13 *Callahan*, 555 U.S. 223, 232 (2009).

14    An officer's actions violate a clearly established right when, at the time of the

15 challenged actions, "'the contours of a right are sufficiently clear' that every

16 'reasonable official would have understood that what he is doing violates that

17 right.'" *Estate of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d at 1017  (quoting

18 *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). This requirement does not mean

19 that there must be a prior case with identical facts. An officer can still be on notice

20 that his conduct "violates established law even in novel factual circumstances."

21 *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). But, "in the light of pre-existing law [,]

22 the unlawfulness [of the officer's conduct] must be apparent." *Id.* at 739 (quoting

23 *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

24    The particular conduct at issue here is the use of deadly force on a suspect that

25 is "armed," (not with a weapon but) with an obvious innocuous piece of plastic that

26 was wrongly perceived as a weapon and that was acting erratically and standing off

27 with the police.

28

**The Law Offices of John L. Burris**
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

1

2    The Ninth Circuit's opinion in *Deorle v. Rutherford,* 272 F.3d 1272 is

3    instructive. In that case, the police encountered a man who had reportedly been

4    acting "erratically." *Id.,* at 1276. The man was "verbally abusive," shouted "'kill

5    me'" at the officers, screamed that he would "'kick [the] ass'" of one of the

6    officers. *Id.* At one point, the suspect "brandish[ed] a hatchet at a police officer,"

7    and the officers observed the man carrying an unloaded crossbow in one hand and

8    what appeared to be "a can or a bottle of lighter fluid in the other." *Id.,* at 12-76-

9    1277. When the man began steadily walking toward one of the officers, he, without

10   giving a warning, shot the man in the face with beanbag rounds. *Id.,* at 1278. The

11   Ninth Circuit denied qualified immunity to the officer, concluding that his use of

12   force was objectively unreasonable under clearly established law. *Id*., at 1285–

13   1286. The court held, "[e]very police officer should know that it is objectively

14   unreasonable to shoot...an unarmed man who: has committed no serious offense, is

15   mentally or emotionally disturbed, has been given no warning of the imminent use

16   of such a significant degree of force, poses no risk of flight, and presents no

17   objectively reasonable threat to the safety of the officer or other individuals." *Id.,*

     at 1285.

18       Although subsequent cases have distinguished and challenged the applicability

19   of *Deorle*, they have done so in situations where the suspect was armed either with

20   an actual weapon or an object that could actually inflict harm. See e.g., *Woodward*

21   *v. Tucson*, 870 F.3d 1154, 1162 (9th Cir. 2017) (holding officers were entitled to

22   qualified immunity under the "clearly established" prong where the officers shot a

23   man who advanced toward them in a small cluttered apartment while yelling with a

24   two-foot length of broken hockey stick raised in a threatening manner); *S.B. v. Cty.*

25   *of San Diego*, 864 F.3d 1010, 1016-17 (9th Cir. 2017) (officer was entitled to

26   qualified immunity where he shot a mentally ill man who had multiple knives in

27   his pockets, and drew one of them from his back pocket). Here, Mr. Diaz was

28   "armed" with an object that could not exact any harm. Mr. Diaz was just unarmed

*The Law Offices of John L. Burris*
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

The Law Offices of John L. Burris

9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

just as Mr. Deorle. *Deorle*, 272 F.3d at 1276-1277. In addition, Mr. Diaz was surrounded and outnumbered by officers, and Officer Green was 20-30 feet away from him. He simply posed no objectively reasonable threat at the time Officer Green used deadly force.

In *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018) the Ninth Circuit found that material fact questions precluded summary judgment on the reasonableness of the shooting when the "officers confronted a reportedly erratic individual that took refuge in a 7-Eleven, cut someone with scissors, asked officers to shoot him, simulated having a firearm, and ultimately charged at officers with something in his upraised hand." Although the *Vos* Court determined that at the time of the event (May 29, 2014) existing precedent had not placed the conclusion that officers acted unreasonably in those circumstances beyond debate, the Vos Court decision put officers on notice (effective June 11, 2018 the date of the decision) that such conduct could result in a constitutional violation. *Id*.

Ultimately, Officer Green's entitlement to qualified immunity depends on disputed facts that must be resolved by a jury. *Nehad*, 929 F.3d at 1140 ("[W]hen there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity.") If the jury finds that Officer Green unreasonably misperceived the object in Mr. Diaz's hand to be the barrel of a gun and misperceived his flailing from the less lethal rounds to be charging at him, then he is not entitled to qualified immunity. The Ninth Circuit recently denied summary judgment to an officer that shot a child who was carrying an obvious toy AK-47. *Estate of Lopez*, 871 F.3d at 1021-22. In *Lopez*, a lay witness observed the child with his toy and it was obvious to him that the AK-47 was fake. That is, the decedent was armed with an innocuous object--not a weapon. The Ninth Circuit held that "[l]aw enforcement officials may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are

The Law Offices of John L. Burris

9701 Wilshire Blvd, Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

armed." *Id*. at 1024. Viewing the facts in the light most to Plaintiffs, this statement put Officer Green on notice that his use of deadly force was constitutionally excessive.

Defendant's authorities are unavailing. In *Barnes v. City of Pasadena*, 508 Fed.Appx. 663 (9th Cir. 2013), Plaintiffs did not present evidence showing that the officers should not have believed that the decedent was armed with a gun. Here, none of the other officers observed a gun and the officers that observed an object in Mr. Diaz's hand did not use deadly force. In *Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001), officers approached a man who was reported to appear to have a gun under his sweater and ordered him to raise his hands. *Id*. at 128. The suspect raised his hands, and then suddenly lowered them "to reach into his back left pocket to turn off his Walkman radio." *Id.* Perceiving a threat, one of the officers opened fire. *Id.* In *Anderson*, the officers did not see the weapon and had probable cause to believe the suspect was armed. Here, Officer Green observed the object and misperceived it to be a knife and then the barrel of a gun. Moreover, the Ninth Circuit has distinguished *Anderson* finding "in contrast to the Fourth Circuit, we have held that mere possession of a weapon is insufficient to justify the use of deadly force. *Lopez*, 871 F.3d at 1013.

### D. GREEN'S CONDUCT SHOCKS THE CONSCIENCE

Plaintiffs' Fourteenth Amendment claim requires Plaintiffs prove that the officer's use of force shocks the conscience. *Gonzalez v. City of Anaheim*, 747 F.3d at 797. The primary legal question under this standard is whether it can be met by a showing of deliberate indifference, or whether the plaintiff must instead show a purpose to harm for reasons unrelated to legitimate law enforcement objectives. *Porter v. Osborn*, 546 F.3d at 1137. If the circumstances were such that actual deliberation was practical, liability may attach from an officer's deliberate indifference. *Id*. at 1138. "Deliberation" for the purposes of the "shocks the conscience" test is not a literal concept and is not necessarily tied to the amount of

The Law Offices of John L. Burris
9701 Wilshire Blvd, Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

time allowed for consideration before action. *Id*. at 1139. Contrary to Defendant's argument, "although most meritorious purpose to harm claims will involve evidence of ulterior motive or bad intent separate and apart from evidence of an unreasonable use of force…, [i]n some cases, a use of force might be so grossly and unreasonably excessive that it alone could evidence a subjective purpose to harm." *Nehad*, 929 F.3d at 1140.

Here, the same facts that reveal Officer Green's departure from objectively reasonable conduct also support Plaintiffs' claim that he harbored an unrelated legitimate law enforcement objective. That is, Officer Green's tunnel vision on Mr. Diaz and his right hand caused him to abandon basic police practices, ignore the presence and commands of his fellow officers, walk into their line of fire, and envision weapons that were not actually there. Moreover, the grossly excessive manner of the force reveals a subjective purpose to harm. Mr. Diaz was obviously "disarmed" by Green's initial shot, but Green continued shooting even after Mr. Diaz fell to the ground which is arguably where the shot to his head occurred. All of this occurred, out of morbid curiosity with what Mr. Diaz had in his hand, which turned out to be a piece of black plastic.

Officer Green's conduct both shocks the conscience and evinces a purpose to harm for which he is not entitled to qualified immunity.

**E. GREEN IS LIABLE FOR DIAZ'S WRONGFUL DEATH**

Under California law, public employees "are statutorily liable to the same extent as private persons for injuries caused by their acts or omissions, subject to the same defenses available to private persons." *Hayes v. County of San Diego*, 57 Cal.4th at 628-629. In addition, "public entities are generally liable for injuries caused by the negligence of their employees acting within the scope of their employment." *Hayes*, 57 Cal.4th at 629.

"In order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that

The Law Offices of John L. Burris
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes*, 57 Cal.4th at 629 (citations omitted). "Under established law, police officers have a duty to use reasonable care in deciding to use and in fact using deadly force. An officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect." *Brown v. Ransweiler*, 171 Cal.App.4th 516, 534 (2009). "[S]tate negligence law, which considers the totality of the circumstances surrounding any use of deadly force is broader than federal Fourth Amendment law, which tends to focus more narrowly on the moment when deadly force is used." *Hayes*, 57 Cal.4th at 639. Importantly, the California Supreme Court has reaffirmed long-standing precedent that where an officer's preshooting conduct did not cause the plaintiff any injury independent of the injury resulting from the shooting, negligence "liability can arise if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes*, 57 Cal.4th at 632.

Tactically, Officer Green stopped paying attention to or listening to his fellow officers, stepped into other officers' lines of fire, and abandoned his position of cover which left him feeling exposed and scared. See e.g., *Howard v. County of Riverside*, 2014 WL 12589650 **9-10 (CD Cal. 2014) (denying summary judgment on negligence because Plaintiff raised several disputed facts regarding cover and the amount of cover the deputies should have had). In addition to putting himself in a precarious position, Officer Green misperceived the black plastic object in Mr. Diaz's hand to be a knife-turned-barrel of a gun. The finder of fact may determine that this escalation in his perception of weapons was precipitated by his fear and not his actual eyesight. Given the totality of circumstances including Officer Green's departure from basic police practices, a jury can find Green liable for Mr. Diaz's wrongful death.

The Law Offices of John L. Burris
9701 Wilshire Blvd, Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070

1   Here, the same material fact questions that preclude summary judgment on
2   Plaintiffs' Fourth Amendment claims, also preclude summary judgment on
3   Plaintiffs' wrongful death claim. Vos, 892 F.3d at 1037 (reversing the district
4   court's "summary adjudication of the Parents' negligence claim" having  already
5   determined that "the district court erred in holding that use of deadly force was
6   objectively reasonable under the Fourth Amendment,"); *Nunez v. City of San Jose*,
7   381 F. Supp. 3d 1192, 1216 (N.D. Cal. 2019) (finding a genuine dispute of
8   material fact as to the objective reasonableness of the officers' use of deadly force
9   in the qualified immunity context, precluded summary judgment as to the wrongful
10  death negligence claim also).

11  **F.  THE SAME QUESTIONS OF MATERIAL FACT PRECLUDE**
12  **SUMMARY JUDGMENT ON PLAINTIFFS' BATTERY CLAIM**

13  Plaintiffs' assault and battery claim against Officer Green requires that
14  unreasonable force be established. *Edson v. City of Anaheim,* 63 Cal.App.4th 1269,
15  1272 (1998). Because the same standards apply to both state law assault and
16  battery and Section 1983 claims premised on constitutionally prohibited excessive
17  force, the same material fact questions that preclude summary judgment on
18  Plaintiffs' Section 1983 claims under the Fourth Amendment also preclude
19  summary judgment on Plaintiffs' assault and battery claim. *Nelson v. City of Davis*,
20  709 F.Supp.2d 978, 992 (ED Cal. 2010).

21  **G. PLAINTIFFS' BANE ACT CLAIM ALSO SURVIVES SUMMARY**
22  **JUDGMENT**

23  California Civil Code Section 52.1 enables individuals to sue for damages as a
24  result of constitutional violation.

25  Officer Green's unjustified use of deadly force is the basis for liability under
26  section 52.1. Although Bane Act claims require the specific intent to deprive a
27  person of constitutional rights, such intent can be proven by evidence of
28  recklessness. *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018)

(discussing *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766 (2017)). Here, Officer Green's reckless departure from basic police practices, tunnel-vision fixation on Mr. Diaz's right hand caused him to ignore the presence and commands of his fellow officers, cross into their lines of fire, and to abandon his position of cover which caused him to fear for his life and to continue shoot Diaz even after he was disarmed and on the ground. This Court should deny Defendant's motion for summary judgment on this claim.

### CONCLUSION

Given the foregoing, this Court should deny Defendant's motion for summary in its entirety.

Dated: December 18, 2020              THE LAW OFFICES OF JOHN L. BURRIS

                                      */s/ DeWitt M. Lacy*
                                      DeWitt M. Lacy

**The Law Offices of John L. Burris**
9701 Wilshire Blvd. Suite 1000
Beverly Hills, California 94212
Telephone: (310) 601-7070